NEWBOLES *v*. STATE.

4529                                      215 S. W. 2d 285

Opinion delivered December 6, 1948.

*Marcus Fietz* and *W. Leon Smith,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ROBINS, J. Appellant, charged with the crime of murder in the first degree for the killing of W. I. Davis, was by a trial jury convicted of voluntary manslaughter and his punishment fixed at imprisonment for two years in the penitentiary. He has appealed from judgment of the lower court imposing sentence in accordance with the verdict.

## I.

For reversal it is first insisted by appellant that the evidence was insufficient to show that appellant was guilty of any offense, and that appellant's motion for an instructed verdict of "not guilty" should have been granted.

The killing took place at the "Brown Pig," a so-called "night-club" operated by appellant in Paragould.

On the night of December 24, 1946, appellant had a difficulty with Warner Mays and Davis, the deceased, at appellant's place of business, in which appellant was beaten with beer bottles and appellant shot and wounded Mays.

The encounter in which Davis was killed by appellant occurred on the night of October 6, 1947. On this occasion Gerald Mays with Allene Denbow and Davis, accompanied by Stella Sheppard, went to the "Brown Pig" together. Earlier in the afternoon of that day Gerald Mays, Allene Denbow, and Davis had gone to Blytheville, where Gerald Mays and Allene Denbow made application for a marriage license, under the law providing a three-day waiting period before the issuance of such license. Afterward they drove to Leachville where they picked up Stella Sheppard. The two couples had then driven to different towns, stopping at each to drink beer, and about 9 o'clock that night they drove up to appellant's place. The men went in first and were followed shortly by the women. They sat down at a booth and ordered beer, which was served to them in bottles.

According to witnesses on behalf of the State, appellant was invited to come over and drink with the party, which, after some delay, he did. While he was sitting with them, according to these witnesses, the trouble arose by Gerald Mays saying to appellant something about not liking the way appellant had treated his (Mays') brother, W. T. (Warner) Mays, on the occasion when appellant had shot W. T. Mays. These witnesses testified that thereupon appellant, after exclaiming that he would kill all of them, started toward the counter where his pistol, a thirty-eight caliber "six-shooter," was kept. He was followed by Davis and Mays, and in the ensuing struggle appellant shot and instantly killed Davis and so severely wounded Mays that he later died in a hospital.

Appellant's testimony, corroborated, in some particulars, by that of other witnesses, tended to show that Davis and Mays made an unprovoked assault on appellant, striking him with beer bottles, and that appellant fled from them to get his pistol that he might repel their attack.

It is earnestly urged that the State's principal witnesses, the two women companions of the slain men, were not worthy of belief. But, as we have so often said, the credence to be given to the testimony of witnesses is a matter peculiarly within the province of the trial jury. *Brown* v. *State*, 208 Ark. 180, 185 S. W. 2d 274. These two young women appeared before the jury and were vigorously cross-examined. It was a matter for the jury, who had the opportunity of observing their demeanor on the witness stand, to appraise properly their testimony. Their testimony, if believed in its entirety, would have justified a verdict of murder. We cannot say that the evidence was not sufficient to support the verdict rendered.

## II.

It is next insisted by appellant that the lower court erred in giving the following instruction: "You are further instructed that the killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the defendant, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense only amounted to manslaughter, or that the accused was justified or excused in committing the homicide."

In other instructions the court properly instructed the jury that, on the whole case, the burden was on the State to establish the guilt of accused beyond a reasonable doubt.

The instruction complained of is a *verbatim* copy of the statute (§ 2968, Pope's Digest), but appellant argues that giving of it in the instant case was erroneous for the reason that there was no evidence on which the jury might have found the appellant guilty of murder and the instruction was therefore abstract and misleading. A sufficient answer is that there was evidence adduced by the State which would have supported a conviction of murder.

## III.

Instructions Nos. XV and XVI are criticized as erroneous by appellant on the ground, as appellant argues, that there was no testimony to justify the giving thereof.

Instruction No. XV was to the effect that the reputation of deceased as to being dangerous and quarrelsome should make no difference in the jury's consideration of the case, if in fact the deceased was not making any attack or demonstration against appellant at the time of the killing. By instruction No. XVI the jury was told that if appellant provoked, brought on, or voluntarily entered into the difficulty with Davis he could not justify the killing on the ground of self-defense. These instructions correctly expressed the law; and there was evidence adduced on behalf of the State that justified the giving of both of them. See *Long* v. *State,* 76 Ark. 493, 89 S. W. 93, 91 S. W. 26; *Lomax* v. *State,* 165 Ark. 386, 264 S. W. 823; *George* v. *State,* 148 Ark. 638, 231 S. W. 9.

## IV.

It is argued by appellant that the lower court erred in instructing the jury on the two degrees of murder, for the reason, as appellant contends, that there was no evidence on which a conviction of murder could be sustained. Appellant concedes that holdings in at least four cases previously decided by us are at variance with his contention, but he asks us to reconsider and overrule these opinions.

It is unnecessary to discuss this assignment further than to say that, as pointed out above, there was testimony given by two of the State's witnesses that would have supported a conviction of murder.

Other assignments of error are urged by appellant. We have carefully considered them and find no error prejudicial to appellant shown. The judgment is accordingly affirmed.